Argued March 13, affirmed March 26, 1958

# COX *v.* BOWMAN ET UX

323 P. 2d 60

George G. Van Natta, of St. Helens, argued the cause for appellants. With him on the brief was G. A. Heikkila, of Portland.

Paul J. Jolma, Clatskanie, argued the cause and filed a brief for respondents.

Before ROSSMAN, Presiding Justice, and LUSK, BRAND and McALLISTER, Justices.

BRAND, J.

This is a suit by the plaintiffs Cox et al., against defendants Bowman, to quiet title to lands described in the complaint, which land, for convenience, the parties have designated as "Blackacre." A decree was entered quieting plaintiffs' title, and defendants appeal.

Blackacre is a small area of about one-third of an acre, which is the site of a spring, reservoir and right-of-way from said spring to another tract of about eleven acres, designated by the parties as "Whiteacre", where the water is used. Blackacre is alleged and proven to be in the sole and exclusive possession of plaintiffs. The complaint contains the usual allegations to be found in such suits. It prays that defendants be required to set forth the nature of their claims.

Defendants deny the allegations of the complaint except that they allege that they acquired title to the property from Nellie Barhan by deed, dated July 17, 1953, and that they acquired said property in good faith and without any knowledge of any claim or interest of plaintiffs therein. They further alleged that plaintiffs did not receive a deed to said land until June 1954 and that plaintiffs well knew of the deed to the defendants at the time they accepted their deed in June 1954. The prayer is that defendants be "awarded title to said land."

To this answer plaintiffs filed a reply alleging that the property described in the complaint (Blackacre) is the property on which is located the spring, storage tank and pipe line of Rainbow Park water system; that the water system is appurtenant to and furnishes water for the land of plaintiffs, known as "Rainbow Park" (Whiteacre). Plaintiffs further allege that Nellie E. Barhan, a widow, was owner of Whiteacre and Blackacre and the water system located on Blackacre, and on 9 March 1948 Nellie Barhan contracted to sell all of said lands and the water system to J. C. Hudson, and that Hudson immediately took possession and performed the contract. The reply further states that Hudson died intestate and his heirs succeeded to the properties, that the heirs took and held possession until they sold to plaintiffs, and that in November 1952 the heirs at law of Hudson agreed to sell the lands to plaintiffs, who immediately took possession and have had possession ever since. It is alleged that the heirs fully performed the contract between their father and Nellie Barhan and that the plaintiffs performed their contract with the heirs. It is further alleged that on 9 April 1953 Nellie Barhan executed and delivered to the heirs of Hudson a deed

to Rainbow Park (Whiteacre) and that she intended to include Blackacre in the conveyance but that by mistake the same was not included and that the heirs of Hudson executed and delivered to plaintiffs their deed to Whiteacre and that they also intended to include Blackacre but that by mistake a description thereof was omitted. The reply further alleges that in June 1954 Nellie Barhan executed and delivered to the heirs of Hudson a deed conveying Blackacre to them pursuant to her contract and that the heirs executed and delivered a deed conveying Blackacre to the plaintiffs. The reply also alleges that in July 1953 the defendant E. F. Bowman secured a quitclaim deed from Nellie E. Barhan purporting to convey Blackacre to him; that defendant paid nothing for the quitclaim deed and knew of plaintiffs' interest in the property when he got the deed.

This controversy arose as a result of a dispute between the plaintiffs and the defendants concerning water rentals claimed by plaintiffs from defendants and other residents of, or near, Whiteacre, to whom the plaintiffs had been supplying water. Defendants secured the quitclaim deed from Nellie Barhan, who at time of trial was over 80 years of age, with intent to use it as a leverage to secure a favorable result in the dispute over charges for water.

The allegation that defendants acquired Blackacre "in good faith and without knowledge of any claim or interest of the plaintiffs therein" is false. Defendants well knew of plaintiffs' claims. The 1953 quitclaim deed constitutes the sole alleged basis for any claim to Blackacre. It is a claim of ownership, yet the defendants in their brief concede "that neither these Appellants nor any of the others in the group similarly interested have ever challenged the right of

the Respondents to make use of all the water they legitimately need for their properties." At the argument in this court we inquired of counsel for defendants whether they still claim that they are entitled to a decree awarding to them title to Blackacre. To this question counsel, with commendable frankness, said:

> "I didn't try the case in the court below, and I don't think that * * * I think the counsel withdrew that particular answer—hoped that the plaintiffs would not be able to prove anything in court and that he would get some kind of a decree by default. I can't think of any other out for it, because the evidence put on by the defendants themselves, the defendants were perfectly truthful about the matter. They told the whole story and there is almost no question of fact between witnesses in this case. This court need not decide who is lying and who isn't, because apparently everybody told the truth as they understood it, and there would be no basis for this court or any other court to award us indefeasible title to that property on the basis of the evidence that there is. We should have the rights that we have mentioned in our brief, and they should have their rights."

Again counsel said:

> "When we received the quitclaim deed we knew perfectly well that they were using the water, that the water system was built for the benefit of Whiteacre—that we were allowed secondary rights in it, and we had no notion of trying to change that situation at all. We do not believe that it would be equitable or proper to allow the plaintiffs to have such an ownership in this property on the state of this record that would entitle them to shut our water off or to make unreasonable demands that we buy their property or pay some tribute to them to stay in business."

Defendants stated their present position, as follows:

> "The defendants think that the decree should be modified or reversed, if you prefer to call it that, and that the plaintiffs be allowed a prior right to the amount of water that they need for their 17 cabins, and that we the defendants should be allowed to use any water that they don't need for their 17 cabins for our houses, and that we should participate in any—in the maintenance, any reasonable charges, that may come up, and we think that we should participate in the payment of taxes."

This is not the issue presented by the pleadings, and if it were, the evidence is not such as to authorize the court to decide it. The ten years of "uninterrupted, peaceful use" by the defendants of water was a use of water furnished by plaintiffs and their predecessors and was paid for by defendants. There is no showing of any contract entitling defendants to purchase water and no showing which convinces us that plaintiffs have demanded an "unconscionable tribute" from defendants. If plaintiffs have placed themselves in the category of a public utility, and if they are making excessive charges, there may be a remedy, but not in this court. If plaintiffs have not assumed the duties of a public utility, the defendants have no standing whatever.

Defendants' assertion of a claim of title to Blackacre, which they now admit to be invalid, does not commend itself to a court of equity. Their reliance was placed on a quitclaim deed. We will not in this court convert the case into a suit for an apportionment of water from a spring.

Defendants concede that there was evidence of mutual mistake and we find that evidence to be convincing. But this is not a case of attempted reforma-

tion. The persons who made the original contract to sell Blackacre and Whiteacre and who made the mistakes which were continued in later conveyances to plaintiffs are not parties to this case. There could be no reformation as to them. But that does not end the case.

■ The contract of 9 March 1948 wherein Nellie Barhan, predecessor in interest of plaintiffs, agreed to sell Whiteacre to J. C. Hudson, contains a description of Whiteacre. Immediately following that description we find the following:

> "This, of course, does not include the respective water rights above mentioned, that is, the Taylor Estham and Hanson Water Rights, but this contract does include all of them, and the deed and the mortgage back will include a proper description of all the respective water rights stated.
>
> "It is also further agreed and understood between us that I will have this property above mentioned, as well as the water rights, accurately surveyed so that there will be no question about the boundary."

We find that the contract properly construed included an agreement to sell Blackacre. The parties so construed it and Nellie Barhan delivered possession of Blackacre to J. C. Hudson pursuant to that agreement. All of the parties involved in plaintiffs' claim of title acted on the assumption that Blackacre was appurtenant to and transferred with Whiteacre where much of the water was used. As against strangers such as defendants, plaintiffs established prima facie title by proof of clear and exclusive possession of Blackacre. They are deemed at least to be equitable owners as against defendants who had full knowledge of plaintiffs' claims when they secured the quitclaim deed.

■ Defendants seek to avail themselves of the doctrine that prior agreements are ordinarily merged in a subsequent deed and that therefore the agreement to sell Blackacre was washed out when the deed which inadvertently omitted Blackacre was delivered. That doctrine does not apply here.

> "Where the deed constitutes only a part performance of the preceding contract, other distinct and unperformed provisions of the contract are not merged in it, and where a contract of sale provides for the performance of acts other than the conveyance, it remains in force as to such other acts until full performance, unless the parties intended to surrender such stipulations. * * *" 26 CJS 845, Deeds, § 91. And see cases cited.

See also, *Smith v. Vehrs,* 194 Or 492, 242 P2d 586.

Here the plaintiffs have sustained the burden of proving that the contract concerning Blackacre was not merged in the deed conveying Whiteacre. The defendants have been ill advised. Their attempt to force a settlement of the dispute over water rentals by securing a quitclaim deed was inequitable. The plaintiffs have made a prima facie case of title as against defendants, and the decree of the circuit court is in all things affirmed.