PHELPS *v.* SHROPSHIRE, ADMR., ETC.

No. 43762 February 14, 1966 183 So. 2d 158

778

*Robertshaw & Merideth,* Greenville, for. appellant.

*Dent, Ward, Martin & Terry,* Vicksburg; *J. H. Hogue, Jr.,* Yazoo City, for appellee, Martha H. George.

*E. C. Clements,* Rolling Fork, for appellees, E. D. Shropshire and others.

ROBERTSON, J.

Ellen Bodley Vick Phelps Crump, a widow, died on November 9, 1958, leaving a holographic last will and testament dated August 23, 1948. The executors named therein declined to act as such, and some of her natural heirs then filed a petition to probate her will and appoint E. D. Shropshire, Chancery Clerk of Sharkey County, Administrator, C. T. A. Her last will and testament was duly admitted to probate on January 27, 1959.

Mrs. Crump had no children and her natural heirs at the time of her death were: A nephew, Henry Vick Phelps, Jr., son of a deceased brother of testatrix; a nephew, Alonzo Phelps George, son of a deceased sister of testatrix; and R. P. Caselli, Teresa Caselli d'Ayala Valva and Mary Phelps Caselli, adult children of a deceased sister of testatrix.

On December 9, 1963, during the course of the administration, Alonzo Phelps George died testate, leaving his wife, Martha H. George, as his sole devisee and legatee, they having had no children.

In the will (being entirely in the handwriting of the testatrix) she attempted to set up an elaborate and complicated trust. The language, used by the testatrix in her attempt to set up the trust, being vague, indefinite and ambiguous, and there being no funds to carry out the will of the testatrix, the administrator on June 16, 1964, filed his petition for construction of the will and instructions as to what he should do. The two charitable beneficiaries of the trust, the Episcopal Church and the Masonic Fraternity, filed their answers in September, 1964, disclaiming any interest therein and declining any

gift that might be intended by the testatrix, the Episcopal Church having been authorized to file a disclaimer by the Episcopal Diocese of Mississippi on January 20, 1960. The will contained no residuary clause.

On January 28, 1965, the chancellor held:

"That the trust provisions of the Will of the said Testatrix are void as to the Episcopal Church and Free Masons and the Supreme Council of the 33rd Degree who have also declined any claim or interest in the estate by written declination herein filed, said trust provisions of the Will being in violation of the rule against perpetuities, and that the beneficial owners of said estate, subject to the requirements of the Will as to constructing certain monuments therein mentioned, are Henry Vick Phelps, Jr., son of Henry Vick Phelps, Sr., brother of Testatrix, a one-third interest; Martha Hicks George, widow and sole devisee of Alonzo Phelps George, nephew of Testatrix and son of Nannie Phelps George, sister of Testatrix, a one-third interest; and Renato P. Caselli, Teresa Caselli d'Ayala Valva and Mary Phelps Caselli, being the children of Mary Phelps Caselli, deceased sister of Testatrix, the owners of a one-third beneficial interest therein."

The chancellor further decreed that the land would be sold to the said beneficial owners for $3,500.00, plus the amount necessary to pay off tax sales, damages, interest, and subsequently accruing advalorem taxes. The $3,500.-00 would be used to erect and construct certain monuments that the testatrix had provided for in her will, and also to pay court costs, legal fees and commissions of the administrator, c.t.a. Henry Vick Phelps, Jr. appeals from this decree, and contends that he should be adjudged the beneficial owner of an undivided one-half interest in the property and the three adult Caselli children, the beneficial owners of the other undivided one-half interest. The appellant contends that the provisions

of the will setting up a charitable trust in the Episcopal Church and Masonic Fraternity are separable from the other trust provisions, and, therefore, that the charitable trust not being subject to the rule against perpetuities went into effect and remained in effect until the said two charitable beneficiaries filed disclaimers.

The appellant contends further that the "family" or "the heirs of the testatrix" should be determined as of the time when the disclaimers were filed by the Episcopal Church and the Masonic Fraternity, the disclaimers being executed and filed in September 1964, or in the alternative that the "family" be determined at the time of the sale of the property.

The pertinent provisions of the will are, as follows:

3.

"I pass the fee simple title to all the real property, wherever situated that I now possess or that I may acquire before or my estate acquire after my death, to my Executors in Trust for the use and benefit of the following interests.

4.

"My nieces and nephews on my mother's side but it is distinctly understood that no interest of Devisor shall pass to anyone not born in lawfull wedlock (2) The Episcopal Church (3) The Masonic Fraternity as represented by the Supreme Council of the 33rd degree of the Southern Jurisdiction of the United States of which John H. Cowles is the present grand Commander and Luther A. Smith is the Sovereign grand Inspector general in the State of Mississippi.

16.

"That this Trust lasts as long as the Institutions of the Episcopal Church and that of the Freemasons or their successors. That, if they dissolve, then the

whole will revert to the oldest descendant living of Alonzo J. and Mary Vick Phelps born in lawful wedlock, in fee simple. Providing that the Trusteeship has existed with the Institutions of the Episcopal Church and the Freemasons for not less than 200 years.

### 21.

''The object of this will is to aid my family and humanity in general through my church and The Freemason to perpetuate the fine character of my parents in their descendants and, generally, to character build, seeking the Truth and what is God's will, everlastingly. But should the Church and the Freemasons find this contribution more of a liability than an asset, then, I direct that everything be sold to the advantage, giving the family the chance to buy it in, distribute the records and heirlooms among the museums, by sale, put the money in the monument, House of Prayer, and, after arranging for a caretaker for the House of Prayer, close the Trusteeship. Proceeds from the sale of the North Carolina property to be used to place a memorial to Dr. Crump in Lenoir, N. C., such as a Fountain or Tablets on which are enscribed the Ten Commandments.''

The condition in Paragraph 16 of the will did not occur, because the two charitable beneficiaries did not dissolve. Thus the provisions of Paragraph 16 are not in issue.

The pertinent condition in the will is contained in Paragraph 21, since the Church and the Freemasons declined the gifts to them. Upon the gifts being declined, Paragraph 21 directs that all assets are to be sold, giving the ''family'' the right to buy the property in, on certain conditions.

 █ Ordinarily, when there is a gift to a charity, with a gift over to a non-charity upon a remote con-

tingency, the second gift fails. There is a condition which may happen beyond the period of perpetuities, and the gift to the individual is void under the rule against perpetuities. Proprietors of the Church in Battle Square v. Grant, 3 Gray 142 (Mass. 1855); Gray, The Rule Against Perpetuities § 593 (4d ed. 1942); Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 668-669 (1938).

However, if a gift is made upon a remote, invalidating contingency, under the "possibilities" aspect of the rule against perpetuities, the gift is still valid when the contingency actually happens within the period of the rule. This conclusion has the effect of avoiding the punitive and technical aspects of the rule, but at the same time confirming its policy and purpose within reasonable limits. It is analogous to the "wait and see" rule, where a gift is made upon either of two express contingencies, one of which must occur if at all within the period, and the other which may not, and the gift is held valid if the first contingency occurs, although it is invalid if the second contingency occurs. Carter v. Berry, 243 Miss. 321, 140 So. 2d 843 (1962); Merchants National Bank v. Curtis, 98 N. H. 225, 97 A. 2d 207 (1953); 6 American Law of Property § 24.54 (1952) and 67 Harv. L. Rev. 355 (1953).

Since the contingency of the two charities declining their gifts actually occurred, and this was within the period of the rule against perpetuities, the gift, consisting of the right of the family to purchase, may be considered valid. There is no precedent in this State which compels us to close our eyes to facts occurring after the death of the testatrix. Refusal of the charitable gifts actually occurred. The Church and the Freemasons never received the gift, because they declined them. Accordingly, the gift over to the "family" of testatrix is valid, since it occurred within the period of perpetuity,

and in fact occurred without the charities accepting their gifts.

 ██ The question is *when* or *as to what time* should the "family" be determined. We conclude that under all of the circumstances it should be determined at the date of the death of the testatrix. The word "family" is to be determined by the statute governing the intestate succession of property. 3 Restatement of Property § 308 (1940). The general rule is that where a class of beneficiaries is described as heirs or next of kin of the testator, the class is determined as of the time of the death of the testator, unless the will reflects a contrary intention. Recognizing this general rule, Dailey v. Houston, 246 Miss. 667, 151 So. 2d 919 (1963) held that all relevant factors indicated a later determination of heirs, where the testator gave the life estate to his spouse, with the remainder to be divided equally between his heirs and wife's heirs. The presumptive rule of determination as of testator's death was said to be simply a method for "judicial assistance in ascertaining either testator's actual intent, or what he would have intended if he had thought about it, provided the words used permit that construction." 246 Miss. at 676, 151 So. 2d at 923. These considerations also apply to a remainder or limitation over in favor of heirs, where the statute on intestate succession is generally applied as of the death of the named ancestor. 3 Powell on Real Property § 375 (1952). In either event, additional language or circumstances can cause a time other than the ancestor's death, or the testatrix's death, to be used for ascertainment of the intended takers.

 ██ ██ In the instant case, Mrs. Crump knew that her nephew, Alonzo P. George, was living, as he was at her death, and, although she gave portions of her estate to the Church and Freemasons, she expressly provided that, if they declined the contribution, then the assets were to be sold and the "family" given the right to buy

it in. If she had known that the charities would decline the gifts, she would have wanted her "family" to take it when she died. This would have included Alonzo P. George. The fact that he died after her but before the charities formally declined their gifts does not negative this inference of testatrix's intent. All relevant factors support the interpretation that the "family" should be determined on the date of testatrix's death. Here the contingency of declining the gift after the period of the rule against perpetuities did not happen. It actually happened that the charities declined the gift within the period of the rule. The chancery court was, therefore, correct in holding that appellant; the Casellis; and Martha Hicks George, the widow of Alonzo P. George, each owned a one-third interest. See 4 Page on Wills § 34.24 (3d ed. 1961).

One-third of the trust in Paragraph 3 went to testatrix's nieces and nephews. The chancery court also erred in stating that this gift violated the rule against perpetuities. A trust is not invalid either in whole or in part merely because the duration of the trust may exceed the period of the rule against perpetuities, provided that the interests of all the beneficiaries must vest within the period. 1 Restatement (Second), Trusts § 62 at 168 (1959); 2 Restatement (Second), Trusts § 365 (1959). The rule against perpetuities deals with remoteness of vesting and not with the duration of vested interests. In upholding such trusts, the courts have frequently pointed out that there was no undue fettering of property for too long a time, because the beneficiaries could at any time terminate the trust. In this instance their pleadings and actions evidence a desire to terminate the one-third trust to them. 1 Scott, Trusts, § 62.10 (2d ed. 1956).

In summary, the charitable trusts for the Church and Freemasons were valid. The remote contingency would have been invalid, but since the charitable

donees declined, we will look at what actually happened. In that view, the gift over to the "family" does not in fact violate the rule against perpetuities, and thus it is good. Finally, the "family" is determined as of the date of death of the testatrix, in view of her intent evidenced by all of the circumstances. Under these considerations, the chancery court reached the right result and the decree is affirmed.

Affirmed.

*Ethridge, C. J., and Rodgers, Brady and Smith, JJ.,* concur.