526 So.2d 526 (1988)
C & D INVESTMENT CO.
v.
GULF TRANSPORT CO., et al.
No. 57676.
Supreme Court of Mississippi.
May 4, 1988.
Rehearing Denied June 3, 1988.
*527 Patrick F. McAllister, Scott, Hetrick & McBee, Jackson, for appellants.
Erwin C. Ward, Thomas B. Alexander, Stennett, Wilkinson & Ward, Erskine W. Wells, Steven H. Begley, Wells, Wells, Marble & Hurst, Jackson, for appellee.
Before HAWKINS, PRATHER and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from a ruling of the Chancellor of Hinds County granting a motion to dismiss the appellant's complaint under Rule 12 (b) (6), MRCP for failure to state a claim upon which relief could be granted.
In substance, this is a dispute over ownership of a strip of land in the Pearlington Subdivision of Jackson. The defendant/appellant (hereinafter Gulf Transport) is a subsidiary of the Illinois Central Gulf Railroad. On July 6, 1972, the Gulf, Mobile and Ohio Railroad (now merged into the Illinois Central Gulf RR) concluded a master agreement with C & D Investment Co., a Mississippi corporation, to plan the use of various tracts of real property owned between the two of them in the Pearlington Subdivision.
Pursuant to the master agreement, Gulf Transport entered an agreement with C & D Investment dated September 13, 1972. This document, after describing certain property owned by the railroad, stated:
NOW, THEREFORE, in consideration of the premises, Railroad agrees with Company that should it, in its sole discretion, dispose of the property hereinabove described lying immediately west of the property previously conveyed to Company, it will convey to Company a 25-foot strip of land north and south and lying immediately west of the Old Maloney Building for purposes of ingress and egress to the Company property.
This document was recorded on November 9, 1972, at the chancery clerk's office.
*528 On May 27, 1983, Gulf conveyed the subject property, including the 25-foot strip, to its parent corporation the ICG RR by warranty deed. Through two mesne ownerships this property was subsequently conveyed by warranty deed dated November 14, 1985, to Marlon Evans, who, with his partner John Overton, was doing business as the Evans Construction Co. Evans and Overton built an office building on the site.
On April 18, 1986, C & D Investment Co. filed a bill of complaint in the Chancery Court of Hinds County alleging that Gulf, Evans and Overton had violated the 1972 agreement and praying for an injunction against the construction of the Evans' building and against Gulf for specific performance of the agreement to convey the 25 foot strip, to confirm title in that strip in C & D, and for general relief. C & D failed to comply with a court order to increase the bond and Evans and Overton moved to dissolve the preliminary injunction. Shortly thereafter all of the defendants filed joint motions to dismiss the complaint under Rule 12(b)(6). On July 31, 1986, the chancellor dissolved the preliminary injunction and dismissed the complaint for failure to state a claim. The chancellor issued a short written opinion in support of his dismissal. He found the agreement of September 13, 1972, was so uncertain in its terms as to be incapable of supporting any practical remedy; that it failed to recite adequate consideration; that it failed to provide an adequate description of the property to be conveyed; and it violated the rule against perpetuities.

ARGUMENTS OF LAW

IS THE APPEAL MOOT?
After the preliminary injunction was dissolved, Evans and Overton continued their construction on the disputed property, ultimately completing their office building. They now move to dismiss the appeal for mootness, relying on the general rule that an injunction will not issue against a fait accompli. However, the injunction was not the only remedy sought by the plaintiff in the court below. The complaint also sought to confirm title in C & D and prayed for general relief. Our test for deciding the presence of mootness in such a situation was announced in Henley v. Kilbas, 188 Miss. 604, 607, 195 So. 582, 582 (1940). For mootness to extinguish an action, there must be circumstances "so that a judgment upon the merits, if rendered, would be of no practical benefit to the plaintiff or detriment to the defendant... ."
By the Henley standard, the present action clearly is not moot. If the Court finds that title to the disputed strip of land should be confirmed in C & D, then C & D could conceivably have actions for damages against both Gulf and the Evans/Overton partnership. Therefore, there are still important legal and equitable issues to be resolved.

DOES THE AGREEMENT VIOLATE THE RULE AGAINST PERPETUITIES?
The instrument of September 13, 1972, by its terms was forged to create a contingent future interest in the grantees, C & D Investment Co. The agreement says that Gulf Transport, "should it, in its sole discretion, dispose of the property hereinabove described, ... will convey" the 25 foot strip of land adjacent to the old Maloney building to C & D. Thus, should the specified condition come about, C & D had a preemptive option to buy the 25 foot strip. This Court has held that the rule against perpetuities applies to such options. Pace v. Culpepper, 347 So.2d 1313, 1317 (Miss. 1977).
The rule against perpetuities requires that, C & D's interest in the 25-foot strip must either definitely vest or definitely fail within 21 years of some life in being at the time of the instrument. Thus, an important problem here is how to ascertain the "life" against which to measure the interest. The parties to an instrument may, if they chose, designate certain lives as measuring lives, but this was not done here. In such a case, courts often consult the instrument and use the lives of the parties or of other individuals mentioned in the instrument. Since this is an agreement *529 between corporations and not natural persons, that will not work here either. In such a situation, the rule is that "when lives in being form no part of the period of suspension or postponement of vesting, the limit of time under the rule of perpetuity is 21 years." 70 C.J.S., Perpetuities, § 18A. Thus, at common law C & D's interest, if it is to withstand the challenge of the rule, must have either definitely vested or definitely failed within 21 years of 1972.
It is readily apparent that under the "traditional" version of the rule against perpetuities, C & D's interest in the 25 foot strip was not good, since it would have vested only upon the occurrence of a contingency which would not necessarily occur within twenty-one years of the instrument. However, this does not end the inquiry, since the appellants argue against the applicability of the rule to the present action.
They rely on Mississippi's adherence to the "wait and see" doctrine. A large majority of jurisdictions hold that "the question of remoteness is to be determined by reference to possible, not actual, events... . If an interest is not good at its creation, no subsequent accidents or occurrences can make it so... ." 70 C.J.S. Perpetuities § 16A. In other words if it is possible for required contingency to happen outside of the perpetuities period, the interest is no good, and it is not saved if the required contingency actually happens during the perpetuities period.
However, a minority of jurisdiction adhere to the "wait and see" doctrine. Under this rule, if the required contingency actually happens during the perpetuity period, the future interest is held valid. 3 L. Simes & Smith, The Law of Future Interests § 1256 (2d ed. 1956, 1985 supp.)
Appellants argue that Mississippi adopted the wait and see doctrine in Phelps v. Shropshire, 183 So.2d 158 (Miss. 1966). Phelps involved a will which created a trust in favor of a church and a masonic order and granted both the right to refuse the gift. In the event the gift was refused by the primary beneficiaries, the will created a shifting executory interest in the testatrix' descendants in the form of an option to purchase the property. The church and the Freemasons did decline the gift, whereupon the gift over to the descendants was attacked as contrary to the rule against perpetuities. This court held:
Since the contingency of the two charities declining their gifts actually occurred and this was within the period of the rule against perpetuities, the gift, consisting of the right of the family to purchase may be considered valid. There is no precedent in this state which compels us to close our eyes to the facts occurring after the death of the testatrix.
Phelps, 183 So.2d at 162.
The appellees retort that Mississippi does not follow the wait and see doctrine and rely on the fact that Phelps was not cited in the Pace decision, supra, while it is true that the Pace court did not mention the Phelps decision, the facts in Pace were different. The Paces' preemptive options in the land were to vest "if and when the approximately 6/10 acre of land being retained [by the Culpeppers] is desired to be sold ..." outside the Culpepper family. 347 So.2d at 1315. It is obvious that the gift to the Paces was bad under the traditional rule against perpetuities, since the contingency  "the land desiring to be sold"  could possibly have occurred outside the perpetuities period. However, in Pace the contingency had not actually occurred. The suit was brought by the Culpeppers while they were still in possession to have the Paces' future interest declared void. Therefore the wait and see doctrine has no applicability to the Pace case. On the other hand, the language in Phelps is explicit: It refers to its holding as "analogous to the `wait and see' rule, where a gift is made upon either of two express contingencies, one of which must occur, if at all, within the period, and the gift is held valid if the first contingency occurs." Phelps 183 So.2d at 162. Further, the Phelps court cited Merchants National Bank v. Curtis, 98 N.H. 225, 97 A.2d 207 (1953), considered the leading case for the wait and see doctrine. Finally, Mississippi's adherence to the wait and see doctrine has been recognized by the authorities, e.g. R. Cunningham, *530 W. Stoebuck, & D. Whitman, The Law of Property § 3.22 (1984); J. Dukeminier, "A Modern Guide to Perpetuities", 74 Cal. L. Rev. 1867, 1883 (Dec. 1986); J. Waggoner, "Perpetuity Reform" 81 Mich. L.Rev. 1718, 1860 (Aug. 1983). On one occasion a federal court sitting in diversity, relied on Phelps for its holding that Mississippi recognizes the wait and see doctrine. Grynberg v. Amerada Hess Corp., 342 F. Supp. 1314, 1322 (D. Colo. 1972). In short, Mississippi does follow the "wait and see" exception.
When that exception is applied to the facts in the present case, it becomes readily apparent that under our rule the agreement was not void. The required contingency  the conveyance of the adjacent land from Gulf Transport to a third party  occurred on May 27, 1983, when Gulf Transport conveyed the adjacent property to its parent corporation, the ICG RR. This was well within the perpetuities period for the 1972 agreement, and therefore the rule against perpetuities is no bar to the plaintiff's action.

WAS THE SEPTEMBER 13 AGREEMENT SUPPORTED BY CONSIDERATION?
The master agreement, which was the parent of the September 13 agreement, clearly states that it was concluded "in consideration of the premises and mutual advantages to be derived by the parties hereto... ."
The general rule is that consideration for a contract need not appear on the face of the instrument, but may be proved by extrinsic evidence. 17 C.J.S. Contracts § 73. See also Dabbs v. International Minerals & Chemical Corp., 339 F. Supp. 654, 661 (N.D. Miss. 1972). In this case, the existence of the master agreement in the record is sufficient evidence that the subsidiary agreement was supported by consideration, and the chancellor erred in holding otherwise.

WAS THE DESCRIPTION OF THE DISPUTED PROPERTY ADEQUATE?
The September 13 agreement, by its terms, purports to give C & D an interest in a "25-foot strip of land north and south and lying immediately west of the old Maloney Building... ." There is no other description of the property to be conveyed. The chancellor held this was an insufficient description of the property.
The most important argument for the appellees is the fact that a description sufficient to make an agreement binding as between the parties may not be enough to bind subsequent purchasers like Evans and Overton. Our basic rule on this problem was laid down in Simmons v. Hutchinson, 81 Miss. 351, 33 So. 21 (1902). There, we observed:
Constructive notice arising from the record ... imputes only such knowledge as the instrument there recorded discloses and not what a diligent inquiry into its meaning might disclose. The registration of an instrument is constructive notice to the world of the paper they recorded or intended to be recorded and of its particular contents only and it will have no operation or effect, unless the original instrument correctly and sufficiently describes the premises which are to be effected.
81 Miss. 350 at 356-57, 33 So. at 22.
In other words, the recording of an instrument does not put any subsequent purchaser on inquiry notice. This principle has been reaffirmed on several subsequent occasions, e.g., Sack v. Gilmer Dry Goods Co., 149 Miss. 296, 302, 115 So. 339, 340 (1928); Saxon v. Saxon, 242 Miss. 491, 496, 136 So.2d 210, 212 (1962).
If this litigation were concerned solely with the legal title, that would probably be the end of the matter, at least as far as it concerns Evans and Overton. But even if their legal title were unassailable, it does not necessarily follow that their holding is not subject to C & D's equitable interest in the property.
As pointed out by the appellants, "it is well settled that one who takes a deed of land with outstanding contract or title, takes it subject to such contract or title, *531 and the person who purchases property with notice of a prior agreement by the vendor to convey to another person is regarded as the trustee of the latter." 71 Am.Jur.2d Specific Performance § 169. The "kicker" here is that courts have been far more liberal in their definition of what constitutes effective "notice" where the finding of notice would result in a subsequent purchaser being subject to an equitable interest than where such a finding would call his title into question. It has been frequently held that a deed in the chain of title which would be discovered by a purchaser is effective to put him on notice as to an equitable interest, whereas a comparable notice would not have made him vulnerable as to his legal title. Hallock v. Bushauer, 113 N.J. Eq. 102, 166 A. 226 (1933), was somewhat similar to the present case. There, the owner of some real property contracted with the plaintiff to convey certain property to the plaintiff, but subsequently sold the property to a third party, who had knowledge of the previous agreement. The plaintiff brought suit against this third party for specific performance of the contract to sell to him. The subsequent purchaser's defense was that the original agreement between the vendor and the plaintiff was not sufficiently definite in the description of the land to be conveyed. The court rejected that argument, holding that the existence of the contract of sale put the subsequent purchaser on inquiry notice since after due diligence he could have ascertained what property it was that was to be conveyed. 166 A. at 227
Another case was Luthi v. Evans, 223 Kan. 622, 576 P.2d 1064 (1978). A vendor contracted to sell a certain party all of his property in a certain county (a so-called Mother Hubbard clause). Instead, he conveyed much of this property to a third party. The court held the subsequent purchaser takes subject to the previous agreement to sell, since he had notice of the previous agreement with a general description capable of being made specific. For similar decisions see, e.g., Hill v. Taylor, 285 Ala. 612, 235 So.2d 647, 649 (1970); Cox v. Bowman, 213 Or. 154, 323 P.2d 60, 63 (1958); Cantrell v. Herring, 144 Fla. 576, 198 So. 206, 208 (1941).
At the hearing on the motion to dismiss, there was testimony that the disputed property was capable of identification by trained surveyors. It was pointed out that the old Maloney Building, to which the 25-foot strip was adjacent, was a recognized landmark. On the whole we cannot say from the record that Evans and Overton lacked the degree of notice necessary to alert them that their property might be subject to C & D's equitable interest. Whether or not the 25-foot strip could be identified with sufficient specificity to put them on such notice could only be determined by a full trial. The same is true of the question whether the completion of the office building has now made specific performance an impracticable remedy. These questions and the merits of any equitable defenses, should be determined by trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.