631 So.2d 768 (1994)
MISSISSIPPI HIGH SCHOOL ACTIVITIES ASSOCIATION, INC.
v.
Mary COLEMAN, Next Friend, by and on Behalf of Her Son, Kiese LAYMON; and the Most Reverend William R. Houck, Bishop of the Catholic Diocese of Jackson, Mississippi, for and on Behalf of St. Joseph High School.
No. 91-CA-0486.
Supreme Court of Mississippi.
January 27, 1994.
*771 John H. Price, Jr., Price & Zirulnik, Jackson, for appellant.
Isaac K. Byrd, Jr., Rhonda C. Cooper, Byrd & Associates, Jackson, Stephen J. Carmody, Jackson, for appellees.
Before HAWKINS, C.J., PRATHER, P.J., and McRAE, J.
PRATHER, Presiding Justice, for the court:

I. INTRODUCTION
This appeal from a permanent injunction arose from the April 11, 1991, order of the Chancery Court of Hinds County, Mississippi, in favor of high-school student Kiese Laymon through his mother, Mary Coleman, and the Most Reverend William Houck, Bishop of the Diocese of Jackson, Mississippi, intervenor. The appellant, the Mississippi High School Athletic Association, Inc.[1], timely filed a notice of appeal.

II. FACTS AND PROCEDURAL HISTORY
Kiese Laymon and his mother, Mary Coleman, moved from Jackson, Mississippi, to the state of Maryland, where Laymon attended a Catholic school for the 1989-90 school year and participated in interscholastic basketball. In August 1990, Laymon and Coleman returned to Mississippi and Laymon enrolled in St. Joseph High School, the school he had attended before his move to Maryland, which is located in the Jackson Municipal Separate School District. However, Coleman and Laymon established a residence in Brandon, where Coleman bought a house. The Coleman/Laymon *772 home is not located in the Jackson Municipal Separate School District.
Laymon began to practice with the St. Joseph basketball team, but was informed by St. Joseph officials that he was ineligible to participate in interscholastic sports during the 1990-91 school year by virtue of the Mississippi High School Athletic Association's anti-recruiting rule. This rule requires that a participant in interscholastic activities attend a school in the school district of which his parents or guardian are bona fide residents.
On November 6, 1990, Mary Coleman filed suit on behalf of her son against the Mississippi High School Activities Association, Inc. (the Association). Coleman alleged that, as a result of Laymon's being denied eligibility to play in a St. Joseph's High School basketball game on November 6, 1990, her son would suffer immediate and irreparable injury or loss. She alleged that the Association's eligibility rules regarding residence had no rational basis for parochial school students. The chancellor issued a temporary restraining order, ordering the Association to allow Laymon to play in that day's game "and other basketball games."
The Association denied having taken any action on Laymon's right to participate in games. The Association claimed no awareness of Laymon's interests until the Association received the TRO, which had been issued without notice. Further, the Association claimed Laymon's residence did indeed disqualify him from participating in St. Joseph's interscholastic activities.
Following an evidentiary hearing, the chancellor granted Coleman's petition for a preliminary injunction and ordered that Laymon be allowed to play 1990-91 varsity basketball for St. Joseph High School.
The Most Reverend William R. Houck, Bishop of the Catholic Diocese of Jackson, moved to intervene based on the Diocese's interests in the extracurricular activities of its students. The court granted the motion.
After another hearing, the court issued its final memorandum opinion and order, granting declaratory relief and a permanent injunction against enforcement of the Association's anti-recruiting rule "as it applies to Kiese and students similarily [sic] situated." The chancellor further held: "The rule in its application in this instance injures the innocent ... [T]he rule is arbitrary, capricious and overbroad and does not make any exception for such cases as Kiese."
The Association appealed, raising the following issues:
A. Whether the trial court erred in granting the TRO;
B. Whether the trial court erred in granting the preliminary injunction;
C. Whether the trial court erred in sustaining objection to the Association's inquiry of Mary Coleman as to the amount of down payment made by her on the purchase price of her home in Brandon, Mississippi; and
D. Whether the trial court erred in granting the permanent injunction and declaratory relief.

III. JUSTICIABILITY OF MOOT QUESTIONS
At this stage of the game, whether the chancellor should have granted the TRO and the preliminary and permanent injunctions to allow Laymon to participate in interscholastic athletic competitions for the 1990-91 school year at St. Joseph High School is clearly a moot question as to Laymon. This Court has said it will not adjudicate moot issues. Jackson County School Board v. Osborn, 605 So.2d 731, 734-35 (1992) (citing Miss. Assoc. of Educators v. Trustees of Jackson Mun. Separate School District, 510 So.2d 123, 126 (1987)). However, the doctrine which prevents adjudication of moot cases provides an exception for those cases which are capable of repetition yet evading review. Strong v. Bostick, 420 So.2d 1356, 1359 (Miss. 1982). In Strong, this Court first adopted this exception and noted that it is limited to situations where (1) the action complained of is too short in duration to be fully litigated before its expiration and "(2) [t]here [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Strong, 420 So.2d at 1359 (quoting Weinstein v. Bradford, 423 *773 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)).
Subsequent to Strong, this Court has set forth only the first prong, as though it were two separate prerequisites to be met before the exception may be applied, to wit: (1) the duration of the challenged action must have been short and (2) the time required to complete an appeal is lengthy.[2]M.A.C. v. Harrison County Family Court, 566 So.2d 472, 474 (Miss. 1990).
In Pascagoula School District v. Doe, 508 So.2d 1081, 1084 (Miss. 1987), this Court simply found the case not moot, without a discussion of whether the same party would be subject to the same action again. In Doe, although the student had completed the school year, appeal of his expulsion was not moot because of the likelihood that the act complained of would be repeated. Doe also cites Strong for the "too short in duration to be fully litigated" prerequisites.
In C & D Investment Co. v. Gulf Transport Co., 526 So.2d 526, 528 (Miss. 1988), this Court stated that, where relief other than an injunction has been requested, a case is moot so long as "a judgment on the merits, if rendered, would be of no practical benefit to the plaintiff or detriment to the defendant."
The Fifth Circuit has found that a one year athletic ineligibility rule satisfies the "too short in duration to be fully litigated" test. Walsh v. Louisiana High School Athletic Ass'n, 616 F.2d 152, 157 (5th Cir.1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). This Court agrees. Therefore, following the test set forth in M.A.C., this Court may properly adjudicate the instant case. Pursuant to Doe, this Court finds the case sub judice not moot because of the likelihood that the challenged action will be repeated. As stated in Doe, "`[j]udicial review invariably takes more than nine months to complete.'" Doe, 508 So.2d at 1084 (quoting Hendrick Hudson Dist. Bd. of Education v. Rowley, 458 U.S. 176, 186 n. 9, 102 S.Ct. 3034, 3041 n. 9, 73 L.Ed.2d 690 (1982)). To paraphrase Doe: to hold this case moot would, in effect, prohibit the Association from enforcing its one year ineligibility rule, when the student is granted relief in the chancery court, because of the length of time required to appeal such a case. The matter could, conceivably, never be resolved if dismissed as moot each time. See Strong, 420 So.2d at 1358. Finally, pursuant to the C & D test, a judgment on the merits will be a detriment to the Association if this Court finds its one year eligibility rule unconstitutional.
As the instant case fulfills this Court's requirements for application of the "capable of repetition yet evading review" doctrine, let us now turn to the issue at hand. The chancellor granted the permanent injunction and declaratory relief based on her finding that the Association's anti-recruiting rule is unconstitutional. The Association questions on appeal the propriety of the relief granted by the chancellor and contends that the anti-recruiting rule is constitutional; Laymon and St. Joseph High School claim the chancellor was correct because the anti-recruiting rule is, indeed, unconstitutional. This Court will, therefore, first address the constitutionality of the rule.

IV. WHETHER THE ASSOCIATION'S ANTI-RECRUITING RULE IS UNCONSTITUTIONAL

A. Is there State Action?
Without state action, there can be no valid claim of unconstitutionality. See Rendell-Baker v. Kohn, 457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). This Court has previously implied that the Association acts under state authority. Mississippi High School Activities Assoc. v. Farris, 501 So.2d 393, 396 (Miss. 1987) (Court addressed due process claim against the Association). See also Laurenzo v. MHSAA, 662 F.2d 1117, 1119-20 (5th Cir.1981) (application *774 of the Association's regulations is state interference with student participation in sports); Walsh v. Louisiana High School Activities Assoc., 616 F.2d 152, 156 (5th Cir.1980) (LHSAA's conduct constitutes state action for purposes of the 14th Amendment), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).
The power to regulate athletic programs is conferred upon the local school boards by the Mississippi Legislature. Miss. Code Ann. § 37-7-301(q) (1972). The school boards, in turn, delegated this authority to the Association. It follows that the Association's actions, flowing as they do from statutory authority, are, as this Court and others have implicitly or explicitly found, state action for the purpose of constitutional analysis.[3]

B. Procedural Due Process
The State may not intentionally deprive a citizen of life, liberty, or property without due process of law. Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986). The analysis to determine what process is due consists of two prongs: (1) whether the party had a property interest of which he was deprived and (2) if he was deprived of a property interest, what process was due him. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982).
The property interest denied must be one previously recognized and protected by the State. Farris, 501 So.2d at 396 (citing Paul v. Davis, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976)). This Court has clearly found that a student has no protected property interest or right to participate in athletics as part of a public education. Farris, 501 So.2d at 396-97. See also N.C.A.A. v. Gillard, 352 So.2d 1072 (Miss. 1977) (same, intercollegiate sports). A student merely has an expectation, rather than an entitlement, to participate in athletics. Niles v. University Interscholastic League, 715 F.2d 1027, 1031 (1983), cert. denied, 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984); Walsh, 616 F.2d at 159-60.
As no constitutionally protected right is at stake, procedural due process is not invoked. Farris, 501 So.2d at 396 (citing Paul, 424 U.S. at 711, 96 S.Ct. at 1165).

C. Substantive Due Process
Substantive due process prohibits governmental infringement of fundamental liberty interests "unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, ___ U.S. ___, ___, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993). Where a right is either explicitly or implicitly guaranteed by the constitution, that right is "fundamental." San Antonio School Dist. v. Rogriguez, 411 U.S. 1, 33-34, 93 S.Ct. 1278, 1296-97, 36 L.Ed.2d 16 (1973).
When no fundamental right is infringed by state action, yet a substantive due process challenge is lodged, the statute (or rule) will be upheld so long as it has a reasonable relation to the State's legitimate purpose. Turrentine v. Brookhaven, Miss. School Dist., 794 F. Supp. 620, 624 (S.D.Miss. 1992) (quoting Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124-25, 98 S.Ct. 2207, 2213-14, 57 L.Ed.2d 91 (1978)). See also Craig v. North Miss. Community Hospital, 206 Miss. 11, 39, 39 So.2d 523, 528-29 (1949).

1. Right to Travel
The right to travel is guaranteed by the federal Constitution. Bell v. Bell, 572 So.2d 841, 845 (Miss. 1990). At least in the context of interstate travel, this is a fundamental right and requires strict scrutiny on review. Dunn v. Blumstein, 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). However, the United States Supreme Court has declined to consider whether there is a distinction between the rights to *775 inter- and intrastate travel. Memorial Hospital v. Maricopa County, 415 U.S. 250, 255-56, 94 S.Ct. 1076, 1080-81, 39 L.Ed.2d 306 (1974). Only where a statute actually deters travel, has impeding the right to travel as its primary objective, or employs a classification which penalizes a group for exercising their right to travel is this constitutional right implicated. Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903, 106 S.Ct. 2317, 2321, 90 L.Ed.2d 899 (1986). The Association regulation at issue here was clearly not promulgated primarily to impede travel; the classifications employed by the regulation will be addressed in conjunction with the equal protection analysis, infra. But does the regulation actually burden the right to travel?
The right to travel is burdened if a penalty is imposed on one who exercises this right. Even a temporary deprivation of an important right or benefit (welfare assistance, medical care, or the right to vote) has been found a penalty. Soto-Lopez, 476 U.S. at 907, 106 S.Ct. at 2323. Permanent deprivation of a less important right (veterans' credits which provide preferential treatment in the attainment of civil service employment) is also a penalty. Id. at 909, 106 S.Ct. at 2324. If a challenged law imposes a penalty on persons because they exercised their right to travel, but there is available another reasonable means of achieving the State's compelling purpose, which will impose a lesser burden on the constitutionally protected activity, the State must choose the less restrictive method. Soto-Lopez, 476 U.S. at 909-10, 106 S.Ct. at 2324-25 (quoting Dunn, 405 U.S. at 343, 92 S.Ct. at 1004).
The only "penalty" imposed as a result of Laymon's exercise of his right to travel is the temporary inability to participate in interscholastic athletic competitions. There is a clear distinction between denial of the right to basic medical care, food, shelter, clothing, or the right to vote, and denial of the right to participate in interscholastic athletic competitions. While the Association's anti-recruitment rule might constitute a penalty on the right to travel if participation in sports was permanently denied, the temporary deprivation of this less important benefit is not a penalty. With no burden on the right to travel, the Association's regulation will be upheld if it has a reasonable relation to the State's legitimate purpose of deterring questionable recruitment tactics. Requiring a student to attend a school which is located within the school district of his bona fide residence, before he will be eligible to participate in interscholastic athletic competitions, is reasonably related to the stated purpose of deterring overzealous recruiting.
The Association's anti-recruitment rule does not impermissibly burden the right to interstate travel. Any restriction on Laymon's right to travel is incidental to the purpose of the rule: to deter certain forms of athletic recruiting. The regulation, instead, burdens that which it was intended to burden: interscholastic sports participation. However, interscholastic sports participation is not a constitutionally protected right, therefore strict scrutiny is not warranted.

2. Freedom of Religion
Laymon claims enforcement of the Association's anti-recruitment rule denies him the right to develop his spiritual education. As this is not a case dealing with state efforts to benefit a particular religion, but one containing allegations that the state seeks to disfavor religious practices, our focus is on the Free Exercise Clause rather than the Establishment Clause. Church of the Lukumi Babalu Aye v. Hialeah, ___ U.S. ___, ___-___, 113 S.Ct. 2217, 2225-26, 124 L.Ed.2d 472, 489 (1993).
Religious freedom is a fundamental right, but a state may still regulate conduct to the point of interfering with a religious practice if the regulation does not intend to interfere with religion. Employment Division v. Smith, 494 U.S. 872, 882, 110 S.Ct. 1595, 1602, 108 L.Ed.2d 876 (1990) (prohibition against religious use of peyote upheld). See also Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (Air Force uniform requirement prohibiting wearing of Jewish head covering upheld). Although a compelling state interest is usually necessary to uphold a statute which substantially burdens religious practices, *776 this test does not apply to invalidate laws or to require exceptions to generally applicable laws. Smith, 494 U.S. at 883-84, 110 S.Ct. at 1602-03. Where a regulation is neutral and generally applicable, it does not violate the Free Exercise Clause, although it may operate to restrict religious expression. Lukumi Babalu Aye, ___ U.S. at ___-___, 113 S.Ct. at 2225-26, 124 L.Ed.2d at 489. No compelling state interest is necessary to justify such neutral, generally applicable laws. Smith, 494 U.S. at 886, 110 S.Ct. at 1604. Where the objective of a statute is to infringe on religious practices because of religious motivation, it is not neutral. Lukumi Babalu Aye, ___ U.S. at ___-___, 113 S.Ct. at 2226-27, 124 L.Ed.2d at 490.
The Association's anti-recruitment rule does not prevent a parent or child from actively practicing their chosen religion. A student may enroll in a private school and take advantage of the religious education offered. The Association's anti-recruitment regulation does not regulate the conduct of student athletes to the point of interfering with any religious practice. The rule at issue merely prevents a student from participating in interscholastic athletic competitions for one year if he attends a school located outside the school district in which he resides; intramural athletic participation is not affected.
Even assuming interference with religious practices, the regulation was not intended to interfere with religion, but to prevent odious recruiting practices. The Association's regulation is neutral, implying no hint of hostility to religion, and generally applicable to all high school student athletes who wish to compete interscholastically, therefore any incidental interference with religious practices does not violate the Free Exercise Clause and no compelling state interest is necessary to such a conclusion. Lukumi Babalu Aye, ___ U.S. at ___-___, 113 S.Ct. at 2225-26, 124 L.Ed.2d at 489. The anti-recruitment rule is a rational means of carrying out the legitimate end: promoting fair competition in interscholastic athletics and preventing overzealous recruiting tactics.

D. Equal Protection
Equal protection demands that any classification of persons at least rationally relate to a legitimate governmental purpose. Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 458, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). The State need not use the least restrictive means to achieve its purpose when no fundamental right is at stake. Jones v. Helms, 452 U.S. 412, 425-26, 101 S.Ct. 2434, 2443-44, 69 L.Ed.2d 118 (1981). An intermediate level of scrutiny is applied to gender based classifications or those based on illegitimacy. Kadrmas, 487 U.S. at 459, 108 S.Ct. at 2488. To withstand this heightened scrutiny, the classifications employed by a statute must advance a substantial state interest. Id. Fundamental rights or suspect classifications require strict scrutiny on review. Id, at 457-58, 108 S.Ct. at 2486-88. This level of scrutiny requires that the state demonstrate that the challenged law is necessary to promote a compelling governmental interest. Loving v. Virginia, 388 U.S. 1, 11-12, 87 S.Ct. 1817, 1823-24, 18 L.Ed.2d 1010 (1967).
Any classification which works to penalize those persons who have exercised the right to travel must serve a compelling state interest. Memorial Hospital, 415 U.S. at 258, 94 S.Ct. at 1082. However, the temporary deprivation of the right to participate in interscholastic sports is not a penalty, therefore strict scrutiny is not warranted. As previously discussed, the Association's regulation does not unconstitutionally burden free exercise of religion either. The "right" infringed upon by the challenged regulation in the instant case is the right to participate in interscholastic athletic competitions. This right is neither fundamental nor constitutionally protected, therefore strict scrutiny is not required unless a suspect classification is involved.
Analysis of an equal protection challenge involves the following determinations: (1) the character of the classifications, (2) the individual rights affected by the classifications employed, and (3) the state interests articulated in support of the classifications. Dunn, 405 U.S. at 335, 92 S.Ct. at 999. The benefit withheld by the classifications *777 employed by the Association's regulation is participation in interscholastic sports, which does not warrant invocation of strict scrutiny. The classifications employed are residents and non-residents of a school district. If based on recent exercise of the right to interstate travel, strict scrutiny would be appropriate. Dunn, 405 U.S. at 335, 92 S.Ct. at 999. But in the case sub judice, the classifications are not based on recent travel, inter- or intrastate. One may not have travelled at all, but have transferred from a school within the district of residence to a school located outside the district of residence, and still be classified a non-resident.
The United States Supreme Court has invalidated laws conditioning receipt of a benefit upon duration of residence. Martinez v. Bynum, 461 U.S. 321, 325, 103 S.Ct. 1838, 1841, 75 L.Ed.2d 879 (1983) (citing Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)). However, bona fide residence requirements have been distinguished. Martinez, 461 U.S. at 325-26, 103 S.Ct. at 1840-41 (citing Memorial Hospital, 415 U.S. at 255, 267, 94 S.Ct. at 1081, 1086). Statutes requiring continuing residence requirements have also been upheld and, again, distinguished from durational residency requirements. Martinez, 461 U.S. at 326, 103 S.Ct. at 1841 (citing McCarthy v. Philadelphia Civil Service Comm'n, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976)).
Bona fide residence requirements have been specifically approved in the context of public education. Martinez, 461 U.S. at 326, 103 S.Ct. at 1841 (citing Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (preferential tuition for residents); Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (requirement of de facto residence for admission to public schools does not violate equal protection)). At least in the context of higher education, the United States Supreme Court has said a one year residency requirement is consistent with Shapiro, despite the durational provision. Martinez, 461 U.S. at 328, 103 S.Ct. at 1842 (citing Memorial Hospital, 415 U.S. at 259-60 and nn. 12 & 15, 94 S.Ct. at 1082-83 and nn. 12 & 15). Bona fide residence requirements do not implicate any suspect class and, when the benefits denied on the basis of such a classification are not constitutionally protected, only the rational basis test is warranted on review. Martinez, 461 U.S. at 329 n. 7, 103 S.Ct. at 1843 n. 7. This is so because a bona fide residence requirement does not burden or penalize travel  one can freely move and establish residence, but residence must be established before one may demand the benefits available only to residents. Id. at 328-29, 103 S.Ct. at 1842-43.
The classifications at issue are based on bona fide residence requirements. This is not a case, as in Shapiro, where receipt of benefits is conditioned on duration of residence, because interscholastic athletic participation is available to every student at a school located within the school district in which he resides, regardless of the duration of the student's residence. Students may move about, either inter- or intrastate, and establish residence freely. But only if the student attends a school which is located within the school district where he resides will interscholastic sports competition be available. It follows that no suspect classification is implicated by the bona fide residence requirements of the Association's anti-recruitment regulation and the regulation will be upheld if it survives the rational basis test on review.
Contrary to Laymon's contention, the anti-recruitment rule does not treat parochial and public transfer students differently  neither may participate in interscholastic athletic competitions during the first year of attendance at a school which is not located within the school district in which the student resides, unless the student refrained from interscholastic athletic competitions for the previous year. The classes created by the rule are resident and non-resident students; the rational basis test is, therefore, appropriate.
The stated purposes of the anti-recruitment regulation, to encourage and promote fair competition among the schools and to deter odious recruitment tactics, are legitimate. Requiring that a student attend a school located within the school district in *778 which that student resides, before the student may participate in interscholastic athletic competitions, is rationally related to the state's legitimate purpose. A classification scheme based on bona fide residence will clearly deter overzealous recruiting practices.

E. Overbreadth
The chancellor found the Association's anti-recruiting regulation overbroad because it provides no exceptions for cases such as Laymon's, i.e., students who attend a school outside of the school district in which they reside for valid reasons which have nothing to do with overzealous recruiting practices. However, only where some constitutional right is affected must a regulation be drawn with precision or narrowly tailored to serve the state's legitimate objectives. Soto-Lopez, 476 U.S. at 909-10, 106 S.Ct. at 2324-26; Jones, 452 U.S. at 425-26, 101 S.Ct. at 2443-44; Dunn, 405 U.S. at 342, 92 S.Ct. at 1003. As no constitutional right is violated by the Association's anti-recruitment regulation, there is no requirement that the regulation be narrowly tailored.

V. CONCLUSION
Although whether enforcement of the Association's anti-recruitment regulation is constitutional is a moot question as applied to Laymon, this case meets this Court's requirements for application of the "capable of repetition yet evading review" doctrine.
The Association's anti-recruiting rule is a form of state action, for purposes of constitutional analysis, derived from statutory authority. But the "state" action in this case has not worked to deprive Laymon of any constitutionally protected property interest, therefore a procedural due process analysis is not necessary.
Regarding substantive due process, the right to travel is not impermissibly burdened by the Association's anti-recruitment regulation because no penalty is imposed as a result of exercising the right to travel. Freedom of religion is not implicated as the anti-recruitment regulation does not regulate the conduct of student athletes to the point of interfering with any religious practice. With no infringement of a fundamental right, only the rational basis test must be met to uphold the Association's regulation. The anti-recruitment regulation is a rational means of carrying out a legitimate state end: promoting fair competition in interscholastic athletics and preventing overzealous recruiting tactics.
Using an equal protection approach, the rational basis test is again the proper standard of review as no fundamental or constitutionally protected right is involved and no suspect classification is employed. The classification at issue, based on bona fide residence requirements, is rationally related to the legitimate purpose of deterring odious recruitment practices and encouraging fair competition among the schools.
The Association's anti-recruitment regulation is not overbroad. As no constitutional right is infringed, it is not necessary that the regulation be narrowly drawn to serve the state's legitimate objectives.
This Court finds the Association's anti-recruitment regulation is constitutional. Consequently, we need not specifically address the issues raised by the Association on appeal. The chancellor erred in granting declaratory relief and issuing the permanent injunction because the Association's anti-recruitment rule is constitutional and enforceable.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
BANKS, J., not participating.
NOTES
[1] The Association is a non-profit organization in which membership is voluntary. Both public and private schools may belong to the Association.
[2] Mississippi's expansion of the exception to the mootness doctrine works to fill the gap left by the unavailability of class actions in Mississippi. Federal courts need not employ such an expanded exception to the mootness doctrine because class actions are available to insure that moot cases which are capable of repetition yet evading review are adjudicated as live controversies. See Bd. of School Comm'rs of the City of Indianapolis v. Jacobs, 420 U.S. 128, 129-30, 95 S.Ct. 848, 849-50, 43 L.Ed.2d 74 (1975).
[3] But see N.C.A.A. v. Tarkanian, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), where a State university's imposition of disciplinary sanctions against a basketball coach was not state action, although such sanctions were imposed in compliance with N.C.A.A. rules and recommendations. The University had not delegated governmental powers to the N.C.A.A., while in the case sub judice, the school boards have delegated governmental powers to the Association.