# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00429-SCT

*MURPHY EXPLORATION & PRODUCTION*

*COMPANY AND COMO PETROLEUM CORPORATION*

*v.*

*SUN OPERATING LIMITED PARTNERSHIP*


DATE OF JUDGMENT: 2/10/1998

TRIAL JUDGE: HON. H. DAVID CLARK, II

COURT FROM WHICH APPEALED: JASPER COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANTS: JAMES EVERITT BAINE

THOMAS MASON

KENNETH HARMON

WALKER L. WATTERS

JOHN A. MOORE

ATTORNEYS FOR APPELLEE: JEFFERSON D. STEWART

JOHN JEFFREY TROTTER

NATURE OF THE CASE: CIVIL - CONTRACT

DISPOSITION: REVERSED AND REMANDED - 09/23/1999

MOTION FOR REHEARING FILED:

MANDATE ISSUED: 10/14/99


**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE AND FACTS

¶1. This appeal arises from a lawsuit filed by Appellants Murphy Exploration & Production Co. and Como Petroleum Corporation against Appellee Sun Operating Limited Partnership in the Second Judicial District of Jasper County Chancery Court. Sun, Murphy, and Como held interests as co-tenants in certain oil and gas leases.[(1)] The Operating Agreement under which the leases were developed provided that a co-tenant shall provide prior notice of a sale to other co-tenants so that they could meet the proposed purchase price if they so desired.[(2)] Of further significance, the Operating Agreement states that "[t]his agreement may be signed in counterpart, and shall be binding upon the parties and upon their heirs, successors, representatives and assigns."

¶2. Sun sold its interest to a third party, Mississippi Oil Acquisitions, LLC, without giving notice to Murphy or Como, and Murphy and Como filed suit against Sun requesting specific performance of the preferential right to purchase. Sun asserted that the Rule Against Perpetuities invalidated Murphy and Como's preferential right to purchase. Sun filed a motion for summary judgment based on this proposition, the lower court granted the motion and dismissed the lawsuit, and this appeal ensued.

## STANDARD OF REVIEW

¶3. This Court utilizes a *de novo* standard in reviewing a grant of summary judgment. ***Allen v. Mac Tools, Inc.***, 671 So. 2d 636, 640 (Miss. 1996); ***Owen v. Pringle***, 621 So. 2d 668, 670 (Miss. 1993). "A trial court may grant summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." ***Roussel v. Robbins***, 688 So. 2d 714, 725 (Miss. 1996). "The motion for a summary judgment challenges the very existence of legal sufficiency of the claim or defense to which it is addressed; in effect, the moving party takes the position that he is entitled to prevail as a matter of law because his opponent has no valid claim for relief or defense to the action, as the case may be." ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 362 (Miss. 1983).

## STATEMENT OF THE LAW

¶4. The issue on appeal is whether the preferential right to purchase in the Operating Agreement is barred by the Rule Against Perpetuities. The Rule has its origin in an English decision rendered in the ***Duke of Norfolk's Case***, 3 Ch. Cas. 1, 22 Eng. Rep. 931 (1682). The effect of the Rule is to defeat the intention of the parties for reason of overriding social policy. The Rule was designed to prevent undue accumulations of land and wealth in the hands of a few.

¶5. The transactions which caused the adoption of the Rule were "donative transactions" such as wills or deeds in which an owner of large amounts of capital or land passes his estate to his heirs or family members. In order to ensure that the property stayed within his family, a testator or grantor controlled the devolution of his property by directing the disposition thereof upon the happening of certain contingencies. The Rule was adopted to limit these donative transfers to prevent a patriarch from tying up the title to property for generations or in perpetuity by imposing restrictions on alienation.

¶6. Under the facts of this case, and based on sound precedent, we will not apply the Rule to the preferential right to purchase contained in the Operating Agreement because the instrument in question involves a leasehold interest in minerals and because free alienation of the subject interest was not

restrained.

¶7. An analogous case interpreting Texas law sets out why public policy dictates the inapplicability of the Rule with respect to an option for first refusal in an oil and gas lease. In ***Weber v. Texas Co.***, 83 F.2d 807 (5th Cir. 1936), the United States Court of Appeals for the Fifth Circuit analyzed a clause in an oil and gas lease which gave the lessee an option to purchase the lessor's royalty rights "at the best bona fide price offered by responsible third parties when and if offered for sale or transfer by lessor." ***Id.*** The court held:

> The rule against perpetuities springs from considerations of public policy. The underlying reason for and purpose of the rule is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarded at common law as a public evil. [citations omitted.]
>
> The option under consideration is within neither the purpose of nor the reason for the rule. This is not an exclusive option to the lessee to buy at a fixed price which may be exercised at some remote time beyond the limit of the rule against perpetuities, meanwhile forestalling alienation. The option simply gives the lessee the prior right to take the lessor's royalty interest at the same price the lessor could secure from another purchaser whenever the lessor desires to sell. It amounts to no more than a continuing and preferred right to buy at the market price whenever the lessor desires to sell. This does not restrain free alienation by the lessor. He may sell at any time, but must afford the lessee the prior right to buy. The lessee cannot prevent a sale. His sole right is to accept or reject as a preferred purchaser when the lessor is ready to sell. The option is therefore not objectionable as a perpetuity.

***Id.*** at 808.

¶8. This Court similarly held in ***Lloyd's Estate v. Mullen Tractor & Equipment Co.***, 192 Miss. 62, 4 So. 2d 282 (1941), that a provision in an oil and gas lease for perpetual renewals of the lease, contingent upon the lessee's payment of annual rentals, neither violated the Rule nor constituted a restraint upon the power of alienation because, *inter alia*, "the leasehold interest in the minerals conveyed [could have been] assigned as often as desired." 192 Miss. at 76, 4 So. 2d at 285. "[T]he lessor [was] not precluded by such a lease from disposing of the land at will nor [was] the lessee hindered in selling or assigning the lease ... ." 192 Miss. at 78, 4 So. 2d at 286.

¶9. Texas courts have long held that the Rule is "only a means of preventing unreasonable restraints on alienation," and "if a preferential right to purchase does not operate to restrain alienation, but only dictates who shall have the first right to acquire property when and if the owner desires to sell it, then the agreement is not within the prohibition." ***Forderhause v. Cherokee Water Co.***, 623 S.W.2d 435, 438 (Tex. Civ. App. 1981), *rev'd on other grounds*, 641 S.W.2d 522 (Tex. 1982). *See also* ***Foster v. Bullard***, 496 S.W.2d 724 (Tex. Civ. App. 1973); ***Sibley v. Hill***, 331 S.W.2d 227 (Tex. Civ. App. 1960); ***Courseview, Inc. v. Phillips Petroleum Co.***, 258 S.W.2d 391 (Tex. Civ. App. 1953). In ***Forderhause***, the court stated:

> The purchase right [a preferential right to purchase oil and gas] involved here does not constitute an unreasonable restraint on alienation. There is no fixed price. There is no absolute option unlimited as to time. There is only the right, exercisable whenever the owner desires to sell, to purchase the property by meeting any bona fide offer. The holder of the right cannot force or prevent a sale; neither

can he fix the price for a sale. In those circumstances there is not such a restraint on alienation as would violate our public policy.

*Forderhause*, 623 S.W.2d at 439. Texas courts have consistently applied these principles in this manner even though the Texas Constitution contains a prohibition against perpetuities. *See* Tex. Const. art. I, § 26.

¶10. The Texas precedent is particularly persuasive because this Court has usually patterned its oil and gas rulings on sound Texas precedent. The Fifth Circuit has noted that "for oil and gas issues of first impression, the Mississippi Supreme Court has long held that it will typically follow decisions of the Texas courts, depending, of course, on 'the soundness of the reasoning by which they are supported.'" *Williamson v. Elf Aquitaine, Inc.*, 138 F.3d 546, 550 (5th Cir. 1998) (*quoting* *Phillips Petroleum Co. v. Millette*, 221 Miss. 1, 72 So. 2d 176, 182 (1954)). In *Williamson*, the court determined that it was not necessary to certify an oil and gas question of first impression to this Court inasmuch as the issue could be resolved by applying Texas law. *Williamson*, 138 F.3d at 549. *See also, e.g., Southwest Gas Producing Co. v. Seale*, 191 So. 2d 115, 122 (Miss. 1966) (choosing remedy used by Texas courts for breach of gas and mineral lease covenant).

¶11. Similarly, Oklahoma courts have held that the Rule does not apply to a preemptive right contained in oil and gas operating agreements:

> In the agreement herein involved, it is evident the preemptive right remains viable only as long as the lease itself remains in effect. No perpetuity is created as there is no way the right could continue after termination of the lease. If the lease expires, neither party would have anything to convey under the right of preemption.

*Producers Oil Co. v. Gore*, 610 P.2d 772, 776 (Okla. 1980).

¶12. Even courts that have applied the Rule to preferential rights to purchase real estate have distinguished similar provisions contained in oil and gas leases, *see, e.g.*, *Ferrero Constr. Co. v. Dennis Rourke Corp.*, 536 A.2d 1137, 1141 (Md. 1988), because oil and gas leases have a limited duration (the lease is valid as long as production is ongoing) and because the preferential right to purchase exists only as long as the oil and gas lease exists. *See Producers Oil Co. v. Gore*, 610 P.2d at 774.

¶13. The preferential right to purchase contained in the instant Joint Operating Agreement does not offend public policy by unduly fettering the transfer of real property. It does not provide for an exclusive option to buy at a fixed price. It does not restrain free alienation. In fact, since the Operating Agreement was executed in 1971, *two* conveyances have occurred: (1) in 1972, Mosbacher sold his interest to Murphy; and (2) in 1980, Texas sold its interest to Sun.

¶14. The present parties to the Operating Agreement may sell their interests at any time. One party cannot force or prevent a sale of the other's interest. One party cannot fix the price for a sale of the other's interest.

¶15. Because the preferential right to purchase does not offend the public policy considerations inherent in the Rule Against Perpetuities, the Rule should not be applied herein, and the Jasper County Chancery Court erred in granting summary judgment to Sun Operating Limited Partnership on this issue. Accordingly, the judgment below is reversed, and this case is remanded to the Jasper County Chancery Court for further proceedings consistent with this opinion.

¶16. **REVERSED AND REMANDED.**

**PRATHER, C.J., BANKS, SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶17. It may be self evident that individuals and corporations should have equal rights under our constitution. It is no less of a truism that persons would do well to follow the law as set forth in the precedents of this Court. Today's majority has forgotten these time-honored beliefs and gone out of its way to ignore precedent and bestow greater privileges on oil corporations than those it gives to individuals. For this reason, I dissent.

¶18. The chancery court was correct when it found that the preferential right to purchase violated the rule against perpetuities. The majority has carved out an exception that did not previously exist for no reason other than that big-moneyed oil interests are involved and want an exception to the rule without having to pay for it. However, well-established precedent requires the opposite result from that reached by the majority.

¶19. In 1971, Robinson Resource Development Company, Incorporated, and Robert Mosbacher entered into a contract to farm out certain oil and gas leases and lands in Jasper County to Texas Pacific Oil Company, Inc. The Operating Agreement appended to the contract included a paragraph requiring any party desiring to sell his rights to give the first opportunity of purchasing those rights to his co-tenants.

¶20. At the time the contract was signed, Mosbacher was the only individual party to the contract. The other signatories were corporations. In 1972, Mosbacher sold his interests to Murphy Oil Corporation. At this time, the Appellees were given notice of the proposed sale but failed to exercise their option to purchase the remaining percentage. Thus, the clock on the rule of perpetuities started ticking. Thereafter, Texas Pacific conveyed its leasehold interests to what became Sun Operating Limited Partnership and Robinson Resource conveyed its interests to Como Petroleum Corporation.

¶21. The instant suit was filed when, in 1995, Sun sold its interests to a third party without first offering Murphy and Como notice of the sale or an opportunity to purchase since it was Sun's position that the preferential right had expired. Sun has continued to defend its actions on the grounds that the preferential right to purchase was unenforceable in that it violated the rule against perpetuities.

¶22. Sun's position was the correct one until today. At the time the parties to the original contract signed the contract in 1971 and, more importantly, when Mosbacher sold his interests to Murphy Oil in 1972, and, indeed, up until today, it was the law in Mississippi that 1) the rule against perpetuities was applicable to preferential rights of purchase (also known as the right of first refusal)[3] and 2) commercial transactions were not excluded from the rule.[4] The Rule Against Perpetuities provides that "[n]o interest is good unless it vests within twenty-one years after the death of all persons in being when the interest is created who can affect the vesting of the interest." *Estate of Anderson v. Deposit Guar. Nat'l Bank*, 541 So. 2d 423, 428 (Miss. 1989). *See also* *Carter v. Berry*, 243 Miss. 321, 358, 140 So. 2d 843, 846 (1962).

¶23. The Rule Against Perpetuities rests on the idea that the "exclusion of property from the channels of commercial development for extended periods of time is a public evil." *Sanders v. Hicks*, 317 So. 2d 61, 63 (Miss. 1975), *overruled on other grounds by* *First Nat'l Bank of Vicksburg v. Caruthers*, 443 So. 2d 861 (Miss. 1983). In its most exacting form, the Rule Against Perpetuities operates to void any conveyance of property that creates a future estate which might possibly not become vested within a life or lives in being at the time of its creation plus twenty-one years thereafter. *See* 61 Am. Jur. 2d *Perpetuities and Restraints on Alienation* § 6 (1981). Mississippi, like many jurisdictions,[(5)] has modified the draconian effect of this rule with the wait and see doctrine.

¶24. The "life" or "lives in being" is known as "the measuring life" since it controls the number of years within which the interest must vest. Where the agreement fails to reference a measuring life and the parties to the agreement are corporations, the measuring life is twenty-one years from the date of the contract. *C & D Investment Co. v. Gulf Transport Co.*, 526 So. 2d 526, 529 (Miss. 1988). *See also* [*Fitchie v. Brown*, 211 U.S. 321, 334, 29 S. Ct. 106, 110, 53 L. Ed. 202 (1908)]; *Ferrero Const. Co. v. Dennis Rourke Corp.*, 536 A.2d 1137 (Md. App. 1988) (corporations cannot be used as measuring lives for purposes of the Rule Against Perpetuities); *Symphony Space, Inc. v. Pergola Properties, Inc.*, 669 N.E.2d 799 (N.Y. 1996) (where parties to transaction being tested against rule against perpetuities are corporations and no measuring lives are stated in the instruments, perpetuities period is simply 21 years); *Village of Pinehurst v. Regional Investments of Moore, Inc.*, 330 N.C. 725, 412 S.E.2d 645 (N.C. 1992) ("If we allowed the measuring life to be the life of a corporation, which may be perpetual, we would eviscerate the rule"); *J.V.I. Builders, Inc. v. First Citizen Corp.*, 1995 WL 1056046 (Va. Circ. Ct) (when the parties are corporate entities which do not contract with reference to a life or lives in being, but rather with reference to an event contemplated to occur in the future, the determinative period is 21 years from the date of creation of the interest).

¶25. Under the "wait-and-see" rule, this Court has held the future interest valid "if the required contingency actually happens during the perpetuity period." *C & D Inv. Co.*, 526 So. 2d at 529. The wait and see doctrine salvages contracts which might otherwise violate the rule against perpetuities by holding enforceable those agreements which do vest within the time period allowed. In other words, a contract that might be void as violative of the rule against perpetuities because it could vest outside the prescribed period becomes enforceable where the passage of time demonstrates that it vests within the period. In this case, the preferential right of purchase was enforceable for twenty-one years (the measuring life of a corporation) after 1972 (the date when Mosbacher was no longer involved; had Mosbacher still been a party to the contract, his life would have been the measuring life).

¶26. In other words, if Sun had sold its interests to a third party prior to 1993 (1972 + 21 years), Murphy's suit for breach of the preferential right of purchase would have been a successful one.

¶27. This, of course, was the law in Mississippi up until today. This was the law when the parties signed the original contract and this was the law in 1972 when Mosbacher sold his interest and his life was no longer the "measuring life." Had the parties wished to make the preferential right enforceable for a period longer than 21 years (the measuring life of a corporation) they could have done so by incorporating a measuring life into the contract. Their failure to include in the contract a measuring life other than that of a corporation meant that the preferential right of purchase should have been valid for a period of twenty-one years only. Mississippi law was sufficiently developed in this area that the parties knew that the preferential right of purchase was enforceable only for a period of twenty-one years.[(6)]

¶28. The majority's fashioning of an exception to the rule against perpetuities "under these circumstances" changes the rules under which the contract in question was drawn. It interferes with the constitutional rights of the parties to the contract and, thus, is in violation of our Constitution. Mississippi Constitution, Art. 3, § 16. The majority's justification for changing the rules is weak. Indeed, the majority must look to Texas law to do so since nothing in Mississippi law supports the exception the majority has fashioned today.

¶29. This court does not make a habit of carving out exceptions to the rules for persons who have been victimized by large corporations which have sacrificed consumer safety for the sake of profits; nor do we bend the rules for persons facing society's ultimate punishment - the death penalty. Why should we make new rules to save big oil companies when they have entered into a poorly written contract? There appear to be more major oil companies joining the amicus brief for the Appellants than there are for the Appellee. I guess the majority of big corporations wins.

¶30. Corporations and individuals have long used our bright-line rule against perpetuities law as a guideline and have structured their contracts accordingly. In the future, it seems, one follows precedent at one's peril.

¶31. Accordingly, I dissent.

## SULLIVAN AND PITTMAN, P.JJ., JOIN THIS OPINION.

1. On April 1, 1971, Texas Pacific Oil Company, Inc. ("Texas"), Robinson Resource Development Company, Incorporated ("Robinson"), and Robert Mosbacher ("Mosbacher") entered into a Farmin Contract regarding the East Bay Springs Prospect (later referred to as "Lake Como Field") in Jasper County, Mississippi. Thereunder, the farmors, Robinson and Mosbacher, agreed to farmout certain oil and gas leases and land to farmee Texas.

Mosbacher subsequently assigned his interests to Murphy, which succeeded to all of Mosbacher's rights and obligations, including those of the preferential right to purchase. According to a deposition of a Murphy representative, Mosbacher sold all of his working interest in Lake Como Field to Murphy.

Texas then conveyed its interests to Sun Oil Company, including its obligations under the preferential right to purchase. Sun subsequently succeeded to Sun Oil Company's interests.

Robinson later conveyed its interests to Como.

2. Paragraph 18 of the Operating Agreement states in pertinent part:

> 18. PREFERENTIAL RIGHT TO PURCHASE
>
> Should any party desire to sell all or any part of its interests under this contract, its rights and interests in the Unit Area, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchasing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing parties.

However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests, or to dispose of its interests by merger, reorganization, consolidation, or sale of all its assets, or a sale or transfer of its interests to a subsidiary or parent company, or subsidiary of a parent company, or to any company in which any one party owns a majority of the stock.

3. *See C & D Inv. Co. v. Gulf Transport Co.*, 526 So. 2d 526, 528 (Miss. 1988) (the rule against perpetuities applies to preemptive options); *Pace v. Culpepper*, 347 So. 2d 1313, 1317 (Miss. 1977) (same). *See also Fallschase Development Corp. v. Blakey*, 696 So. 2d 833, 835 (Fla. App. 1997); *Estate of Royer v. Wineland Equip., Inc.*, 663 A.2d 780, 882 (Pa. 1995); *Lake of the Woods Assoc., Inc. v. McHugh*, 380 S.E.2d 872 (Va. 1989); *Ferrero Construction v. Dennis Rourke Corp.*, 536 A.2d 1137, 1139 (Md. 1988);

4. *C & D Inv. Co*. *v. Gulf Transport Co.*, 526 So. 2d 526, 528 (Miss. 1988). *See also Wedel v. American Elec. Power Service Corp.*, 681 N.E.2d 1122, 1134 (Ind. App. 1997); *Ferrero Construction v. Dennis Rourke Corp.*, 536 A.2d 1137, 1139 (Md. 1988); *Symphony Space Inc. v. Pergola Properties, Inc*., 669 N.E.2d 799 (1996); *Lake of the Woods Assoc., Inc. v. McHugh*, 380 S.E.2d 872 (Va. 1989).

5. *Hansen v. Stroecker*, 699 P.2d 871 (Alaska 1985); *Wedel v. American Elec. Power Service Corp.*, 681 N.E.2d 1122, 1134 (Ind. App. 1997); *Pond v. Pond*, 678 N.E.2d 1321, 1324 (Mass. 1997) ; *Estate of Royer v. Wineland Equip., Inc.*, 663 A.2d 780, 882 (Pa. 1995).

6. We have stated, "that, as a general rule, a court of equity will not relieve a party from a contract made by him . . . in ignorance of the law." *Everett v. Hubbard*, 199 Miss. 857, 865, 25 So. 2d 768, 770 (1946) (*quoting Nabours v. Cocke*, 24 Miss. 44, 53 (1952)). The law and facts existed at the time of the contract and at the time of the chancellor's decision.